IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

ADRIANA PRESAS,                                          Hon.   _____

           Plaintiff,                                          Case:   _____

v.

LANSING PUBLIC SCHOOLS,
YVONNE CAAMAL CANUL,
Superintendent, in her Official and Individual Capacities;
DONNA POHL,
Principal, in her Official and Individual Capacities;
WILLIE ROGERS,
Public Safety Officer, in his Official and Individual Capacities,
OTHER UNIDENTIFIED DOES,
 in their Official and Individual Capacities,


           Defendants,

_____ /

Karen Truszkowski (P56929)
Temperance Legal Group PLLC
530 Mall Court #131
Lansing, MI  48912
517.235.3053 phone / 347.412.6081 fax

Karen@temperancelegalgroup.com

*Attorney for Plaintiff*

## COMPLAINT AND JURY DEMAND

*This cause of action arises from Defendants' deliberately indifferent response to a student-on-student sexual assault on school premises and subsequent sex-based harassment.  Defendants' failure to promptly and appropriately investigate and respond to the assault subjected Plaintiff to further sexual harassment and a hostile environment, effectively denying her access to educational opportunities.  This action alleges violations of Title IX and the denial of equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution.*

1

Plaintiff, ADRIANA PRESAS, by and through her attorney, KAREN TRUSZKOWSKI, hereby files the following complaint against Defendants as captioned above.

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

2. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

3. Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (a), as more fully set forth herein.

4. This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## II. THE PARTIES

6. At all material times Plaintiff was a resident of Ingham County, State of Michigan.

7. At the time of events complained of herein, Plaintiff was a student attending Eastern High School, a high school within the Defendant LANSING PUBLIC SCHOOLS ("the School District").

8. The Defendant School District is a public educational institution located in Ingham County, State of Michigan.

9. At all material times, Defendant YVONNE CAAMAL CANUL ("Canul"), in her official and individual capacities, worked within Ingham County, State of Michigan.

10. During all material times, "Canul" was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of her employment and her employer.

11. At all material times, DONNA POHL, ("Pohl"), in her official and individual capacities, worked within Ingham County, State of Michigan.

12. During all material times, Pohl was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of her employment and her employer.

13. At all material times, Defendants "Unidentified Does" in their official and individual capacities, worked within Ingham County, State of Michigan.

14. At all material times, "Unidentified Does" were agents and/or employees of Defendant School District, acting or failing to act within the scope, course, and authority of their employment and their employer.

15. At all material times, Defendant Public Safety Officer WILLIE ROGERS, ("Rogers") in his official and individual capacities, worked within Ingham County, State of Michigan.

16. At all material times, "Rogers" was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of his employment and his employer.

### III.  APPLICABLE LAW AND POLICY

17. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 (a), states that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…

18. Title IX is implemented through the Code of Federal Regulations.  See 34 C.F.R. Part 106.

19. 34 C.F.R. § 106.8 (b) provides:

> …A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

20. In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

21. In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in *Gebser* to cases where the harasser is a student, rather than a teacher.

4

22. *Davis* held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is:

> a) deliberately indifferent to sexual harassment of which the recipient has actual knowledge, and
> b) the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.
>
> *Davis*, 526 U.S. at 1669-76.

23. The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

24. At MCL 380.1311(2), Michigan law provides that "If a pupil…commits criminal sexual conduct in a school building or on school grounds, the school board, or the designee of the school board…shall expel the pupil from the school district permanently."

25. The Lansing School District's Code of Conduct provides disciplinary action in the event of Sexual Harassment or intimidation.  That policy defines sexual harassment to include "Unwelcome sexual advances, teasing, jokes, remarks, or questions, either verbal or physical, toward another person because of his/her sex or sexual orientation.  Also includes a request for sexual favors or other verbal or physical conduct of a sexual nature where such conduct has the purpose or effect of unreasonably interfering with a student's educational performance by creating an intimidating, hostile, or offensive educational environment."  (See Code of Conduct pages 2, 16, 17 attached as EXHIBIT 1.)

## IV.  COMMON ALLEGATIONS

26. At all material times, the School District was receiving federal funding, as contemplated by Title IX, 20 U.S.C. § 1681, *et seq*.

27. The School District implemented and executed policies and customs in regard to the events that resulted in the deprivation of Plaintiff's constitutional, statutory, and common-law rights.

28. The School District is responsible for ensuring that all its employees are properly trained and supervised to perform their jobs.

29. The School District is responsible for the acts and omissions of its employees.

30. Plaintiff is a female and was a minor at the time of the assault that is the subject of this complaint.  Plaintiff turned eighteen years old on May 25, 2015.  Plaintiff attended Lansing Eastern High School ("Eastern"), a school within the defendant School District.

31. At the time of the assault, fellow student "EJ" was in his senior year and was a prominent athlete at Eastern.

32. Before the incident in question, Plaintiff and EJ had a brief "relationship."  This relationship ended when Plaintiff discovered that EJ lied to her about having fathered two children.

33. On September 9, 2014 during the school lunch period, EJ violently and forcibly sexually assaulted Plaintiff in his truck behind a maintenance building on Eastern High School grounds ("incident").

34. During the incident, EJ slammed Plaintiff's head against the truck's door.

35. After assaulting Plaintiff, EJ ordered Plaintiff out of his truck and drove off.

36. Plaintiff did not want to return to school because she had a class with EJ right after the lunch period.  Plaintiff called a friend ("Friend.")  Friend met Plaintiff and walked with her back to Friend's house.

37. Friend encouraged Plaintiff to report the assault.  Plaintiff was initially afraid to do so because EJ was a football player.  Friend finally convinced Plaintiff to make the report at which time Friend's cousin came over and drove both the Plaintiff and Friend to Eastern.

38. During this time, EJ repeatedly texted Plaintiff that Plaintiff and EJ were going to "get into trouble."    Plaintiff tried to ignore the messages.  Eventually, Plaintiff responded by texting back "I am not going to get in trouble, you raped me."  EJ acknowledged the sexual assault by responding to Plaintiff with a text stating "I know.  I'll pay you."  Plaintiff was shaking and felt like she had had a seizure due to EJ slamming her head into the truck door.

39. Plaintiff's Friend called Plaintiff's cousin who took Plaintiff back to Eastern.  Back at the school, the cousin called Plaintiff's mother ("Mother") and Plaintiff and cousin went to Principal's Pohl's office to report the rape.

40. Upon arrival at Principal Pohl's office, Pohl was there along with Officer Rogers.  Rogers stood by the door, Plaintiff sat at the table, and Pohl remained standing.

41. Pohl acted annoyed, stating the police had to be called and Pohl had a meeting to go to.  Pohl asked Plaintiff why she was outside at lunch period and said "we suspend students for doing that."  Pohl never asked Plaintiff how she was or if she needed medical attention.  Pohl acted cold and indifferent as if she were being inconvenienced.

42. Once the police and Plaintiff's mother arrived, the police took Plaintiff's statement then called for backup.

43. The backup police then arrested EJ who was on school grounds attending football practice.

44. During this time, Superintendent Canul came into Pohl's office, said "hello" then left to attend a meeting.  Canul did not ask about Plaintiff's well-being and did not show any concern for Plaintiff.

45. After taking Plaintiff's statement, a female police officer accompanied Plaintiff to Sparrow Hospital along with Plaintiff's mother and grandmother.

46. At the hospital, Plaintiff had to be sedated and a rape kit was completed.  A CT scan of Plaintiff's head was also done due to a large bump on the back of Plaintiff's head sustained during the assault.

47. Plaintiff was released and went home in the early morning hours of September 10, 2014.

48. Later in the morning of September 10, 2014, two Lansing Police detectives arrived at Plaintiff's home, interviewed her and took photographs of her bruises.  The officers advised Plaintiff, who was there with her mother and grandmother, to take a few days off from school.

49. As of September 14, 2014, five days after the assault, no one from the school district had called Plaintiff or her family to inquire after Plaintiff's well-being or to offer services, explain Plaintiff's rights or to discuss options for continuing Plaintiff's education.

50. On September 10, 2014, the day after the assault, Plaintiff began receiving threats and harassment via electronic means and social media accounts.  When Plaintiff changed all of her social media settings to "private," people made false profiles in her name and continued the threats and harassment.  Plaintiff was told she was "too ugly to rape," she should "kill herself," was called a "whore," and was threatened with being raped again.  Plaintiff was also verbally harassed when she went out into the community.  The threats and harassment have never stopped and continue at the time of this complaint.

51. On Monday, September 15, 2014, Plaintiff's Mother called Pohl but Pohl was not available.  Mother left several messages relaying that Plaintiff is being threatened and harassed and that Mother is afraid to send Plaintiff to school unless she knows that Plaintiff will be safe.  Due to said threats, Mother is also afraid to leave Plaintiff alone.

52. Over the next two days, September 15 and 16, 2014, Pohl and Mother play "phone tag," leaving messages for each other.  Mother then goes to the school in person, but Pohl is not there.

53. On September 17 and 18, 2014, Mother calls Canul's office, leaving several messages with the secretary, again relaying her concern for Plaintiff's safety due to the threats and harassment.  Canul, however, never returned Mother's calls.

54. On September 21, 2014, Mother calls Pohl's office but once again, Pohl was "out."  When Mother expressed her frustration to the secretary, the secretary told Mother that she needed to talk to Plaintiff's counselor.

55. Mother then called the counselor's office but was told the counselor was not in.  After leaving more messages and not hearing from the counselor, Mother went in person to the school counseling center but the counselor was still not in.

56. Mother attempted to make an appointment with the counselor but was told that she could not, that she must keep stopping by until she found the counselor in. Mother nor Plaintiff ever heard back from counselor.

57. Plaintiff's mother then placed calls to all personnel on the Lansing School District employee, administration, and school board phone rosters, leaving messages regarding her fear for Plaintiff's safety due to threats and harassment.  Not one person returned Mother's phone calls.

58. On September 21, 2014, Mother again went to the school in person to see Pohl. Again, Pohl was "out." In sheer frustration, Mother told the secretary that no one was returning her phone calls, that her daughter was being threatened, and that Mother was going to contact the media. The secretary then called security who told Mother that she would not be allowed on school grounds if she "behaves that way."

59. Plaintiff's mother was instructed to contact Student Services. When Mother called Student Services, they knew nothing about Plaintiff. Upon explaining about Plaintiff's assault and the threats and harassment, the Student Services secretary asked why Plaintiff was not doing online classes. The secretary provided Mother with information for APEX, an online class system.

60. Plaintiff was not offered any assistance by the School District for use of this system. Plaintiff was on her own. Beginning in January, 2015, Plaintiff did her schoolwork online but because of the unfamiliarity with the system, her work was not correctly reported to the School District so that at the end of the first card marking, the School District showed that Plaintiff was failing all classes. Instead of offering help, the School District told Plaintiff she had to complete the work she had done all over again.

61. Plaintiff then discontinued the online classes and tried to complete the school work offline on her own.

62. Plaintiff also resumed a Certified Nursing Assistant (CNA) program in January, 2015; a program which Plaintiff had begun in September, 2014 before the assault.

63. Plaintiff's teacher for the CNA classes also tried to assist Plaintiff in completing her regular schoolwork. Though she did her best, this teacher was not experienced in the regular class curriculums. Again, the School District offered no assistance to Plaintiff.

64. In December, 2014, Plaintiff, who had been on the cheer team for fall 2014 football, was invited to attend cheerleading tryouts for Eastern's basketball team. Plaintiff was told by the cheer coach ("Coach") that Pohl instructed the Coach to tell Plaintiff that she could not be on the cheer team because Plaintiff was not an Eastern student.

65. The Coach was also instructed to tell Plaintiff that a parent had complained that if EJ could not be on the football team then it was not fair for Plaintiff to be on the cheer team.

66. After EJ's arrest, he did not return to football as he was never released from jail before being sent to prison in February 2015. [1]

67. Plaintiff did not return to Eastern after the assault due to the hostile environment she was subjected to. The threats and harassment continued via electronic devices and social media which Mother relayed to the School District on numerous occasions. The School District blatantly ignored Mother's pleas to ensure Plaintiff's safety and miserably failed in its duty to Plaintiff. Officer Rogers told Plaintiff she was "contributing" to the harassment because she was responding to the comments on her social media accounts.

68. Though Plaintiff did not physically attend classes at Eastern, she nevertheless continued to be a student, working online on her own then continuing her school work offline and submitting it to the School District.

69. Since the day of the incident, the School District failed to notify Plaintiff or her Mother of who the School District Title IX Coordinator was, failed to explain to Plaintiff or her Mother the Plaintiff's right's and entitlements under Title IX, failed to offer counseling services, failed to take any measure to provide Plaintiff with a safe school environment, and failed to take

---

[1] EJ pled no-contest to one felony count of third-degree criminal sexual conduct reduced from first-degree criminal sexual conduct. He was sentenced to 7-15 years in the Michigan Department of Corrections on February 26th, 2015.

any measures whatsoever to address or stop the threats and harassment that began immediately after the incident.

70. Plaintiff has and continues to suffer psychological distress, loss of standing in her community, and damage to her reputation to her standing in the community.   Plaintiff was forced to leave Michigan and move to another state to get away from the ensuing harassment.

71. Plaintiff suffered sex-based harassment that was severe, pervasive, and objectively offensive.

72. The sex-based harassment deprived Plaintiff of access to the educational opportunities or benefits of the school.

73. School District Officials, including Canul, Pohl, and Rogers had the authority to take remedial action to correct the sex-based harassment.

74. The Defendants responded with deliberate indifference to the sex-based harassment.

75. Plaintiff was afraid to return to school, was not given the appropriate assistance for online classes, for offline classwork, was not allowed to participate in cheer team, was denied a normal childhood, was denied her senior year of high school, was denied her first year of college, and was denied her right to enjoyment of and an opportunity for a free and appropriate public education.

76. Plaintiff required mental health counseling and medication for depression to cope with the assault and the subsequent harassment and threats.

77. The Defendants' conduct was such that students in Plaintiffs' circumstances will be chilled from reporting instances of sexual harassment or abuse in the future.

78. As a direct and proximate result of the harassing educational environment created by the Defendants' deliberately indifferent response to the sexual assault and sexual harassment, as

well as violations of her Fourteenth Amendment rights, Plaintiff has suffered and continues to suffer psychological damage, emotional distress, loss of standing in her community, and damage to her reputation, and her future relationships have been negatively affected.

79. Plaintiff has also been deprived of a normal childhood education due to the Defendants' conduct and the resulting educational environment.

80. Plaintiff has also been damaged by missed educational opportunities and her future earnings capabilities have been damaged by Defendants' conduct and the resulting hostile educational environment.

## COUNT 1
## VIOLATION OF TITLE IX
## AS TO DEFENDANT LANSING PUBLIC SCHOOLS

**(20 U.S.C. § 1681, *et seq*)**

**(The School's Deliberate Indifference to Sexual Harassment)**

Paragraphs one through 80 are incorporated by reference as if stated in full herein

81. The sex-based harassment articulated in the Plaintiff's common allegations was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational benefits provided by the school.

82. The Defendant School District created and/or subjected the Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C § 1681 (a) ("Title IX"), because

   a) Plaintiff was a member of a protected class

   b) she was subjected to sexual harassment in the form of a sexual assault by another student;

   c) she was subjected to harassment based on her sex; and

 d) she was subjected to a hostile educational environment created by the School District's lack of effective and appropriate policies and procedures to properly prevent, investigate, and address sexual assault and harassment.

83. The Defendants had actual knowledge of the sexual assault and the resulting harassment of Plaintiff created by Defendants' failure to protect Plaintiff in a timely manner and consistent with its own policies and state and federal law.

84. The Defendants' failure to promptly and appropriately respond to the alleged sexual harassment, resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the School District's education program in violation of Title IX.

85. The Defendant School District failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment and instead acted with deliberate indifference toward Plaintiff.

86. The Defendant School District persisted in its actions and inaction even after it had actual knowledge of the harm suffered by the Plaintiff.

87. The Defendant School District engaged in a pattern and practice of behavior designed to discourage and dissuade students and parents of students who had been sexually assaulted from seeking assistance and protection.

88. This policy constitutes disparate treatment of female students and has a disparate impact on female students.

89. The Plaintiff has suffered emotional distress and psychological damage, and her character and standing in the community have suffered from the harassment fostered as a direct and proximate result of the Defendants' deliberate indifference to her rights under Title IX.

## COUNT II
## VIOLATION OF TITLE IX
## AS TO DEFENDANT LANSING PUBLIC SCHOOLS

**(20 U.S.C. §, 1681 *et seq*)**

**(Retaliation by Withholding Protection Otherwise Conferred by Title IX)**

Paragraphs one through 89 are incorporated by reference as if stated in full herein.

90. Fellow students and other unknown parties harassed Plaintiff for reporting her attack to the police and the school. Plaintiff's Mother reported this harassment to School officials who failed to intervene to stop it. (See screenshot messages attached as EXHIBIT 2.)

91. The sexual assault of the Plaintiff was discussed in other Eastern High School classes, including a class attended by the younger sister of the Plaintiff where the assault was the "CURRENT EVENT " in home room.

92. Plaintiff and her Mother were treated by the School District as if they were a "bother" and inconvenience.

## COUNT III
## 1983 VIOLATION AS TO
## DEFEDANTS LANSING PUBLIC SCHOOLS, CANUL, POHL, AND ROGERS
## (42 U.S.C. § 1983)

Paragraphs one through 92 are hereby incorporated by reference as if set forth in full herein.

93. Under the Fourteenth Amendment, Plaintiff had the right as a public school student to personal security and bodily integrity and Equal Protection of Laws.

94. Defendants Canul, Pohl, and, Rogers were all state actors acting under the color of state law.

95. The Defendants each subjected Plaintiff to violations of her right to personal security and bodily integrity and Equal Protection of Laws by: failing to adequately train and supervise

15

Canul, Pohl, Rogers and manifesting deliberate indifference to the sexual assault and ongoing harassment of Plaintiff by other students and people in the community, including EJ.

96. The School District has and continues to have unconstitutional customs and policies of:

a) failing to investigate evidence of criminal and tortious misconduct against School District students in the nature of violations of their right to personal security and bodily integrity

b) failing to adequately train and supervise School District employees with regard to maintaining, preserving, and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

97. On information and belief, the School District has followed these unconstitutional customs and policies not only with regard to Plaintiff but also with regard to criminal and tortious misconduct committed against other School District students.

98. The School District's policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

99. Defendants Canul, Pohl, and Rogers are or were at the time of the events within policymakers for the purpose of implementing the School District's unconstitutional policies and customs.

100. Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the ongoing harassment fostered as a direct and proximate result of Defendant School District's deliberate indifference to her rights under the Fourteenth Amendment.

# COUNT IV
## *MONELL* LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE AS TO RESPONSE TO SEXUAL ASSAULT AS TO DEFENDANT LANSING SCHOOL DISTRICT

### (42 U.S.S § 1983)

Paragraphs one through 100 are hereby incorporated by reference as if set forth in full herein.

101.  Defendants Canul, Pohl, and Rogers were "state actors" working for the Lansing School District, a federally funded school system.

102.  Defendants Canul, Pohl, and Rogers acted under "color of law" when refusing to respond to Plaintiff's sexual assault on school grounds.

103.  Defendants Canul, Pohl, and Rogers failed to preserve Plaintiff's constitutional rights to equal protection as guaranteed by the Fourteenth Amendment.

104.  Under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff had the right to equal access to an educational environment free from harassment and discrimination.

105.  Defendants Canul, Pohl, and Rogers should have known that their response to sexual assault allegations must comply with federal law, particularly as outlined in Title IX's published and widely promulgated implementing regulations.

106.  Defendants Canul, Pohl, and Rogers each violated Plaintiff's right to equal access by:

a)  Failing to take steps to protect the Plaintiff as necessary;

b)  Treating the Plaintiff with deliberate indifference both immediately following the assault, and during the months afterwards until the Plaintiff graduated;

c)  Failing to provide a safe, non-retaliatory grievance procedure for students to file complaints of sexual discrimination, including complaints of sexual violence.  The

procedure must include an equal opportunity for both parties to present witnesses and some other evidence and the same appeal rights.

d) Failing to use a preponderance of the evidence standard to resolve complaints of sex discrimination in grievance procedures; and

e) Failing to notify both parties of the outcome of the complaint.

107.  Defendant Lansing School District violated Plaintiff's Fourteenth Amendment right to equal protection by failing to properly train and supervise its employees as to these mandated investigative requirements.

108.   These policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

109.  Defendants actions and lack of actions were the proximate cause of Plaintiff's emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a result of Defendant School District's deliberate indifference to her right to equal protection under the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against the Defendants Lansing School District, and Defendants Canul, Pohl, Rogers, and other-to be identified Does, as follows:

A.  Compensatory Damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out-of-pocket expenses incurred due to these circumstances;

B.   Punitive damages;

C.  Injunctive relief requiring the School District to take effective steps to prevent sex

-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and/or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it.

D.  Statutory Interest

E.  Costs; and

F.  Reasonable attorney fees.

## JURY DEMAND

Now comes Plaintiff, Adriana Presas, by and through her attorney, Karen Truszkowski, and demands a trial by jury.


DATED:  May 22, 2016          */s/ Karen Truszkowski*

Karen Truszkowski (P56929)
Temperance Legal Group PLLC
530 Mall Court #131
Lansing, MI  48912
517.235.3053 phone / 347.412.6081 fax
Karen@temperancelegalgroup.com

*Attorney for Plaintiff*